UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| ASHLEY LEVARIO, *an individual*, | Case No. 3:23-cv-01262-AR |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| OREGON HEALTH AND SCIENCE UNIVERSITY, *an independent public corporation*, | |
| Defendant. | |

**ARMISTEAD, Magistrate Judge**

Plaintiff Ashley Levario brings this action against her former employer, Oregon Health and Science University (OHSU) for unlawful discrimination. Levario alleges that OHSU discriminated based on her religion when it denied her request for a religious exception to its COVID-19 vaccine mandate and failed to make a good-faith effort to accommodate her religious beliefs, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., and Oregon's statutory parallel, ORS § 659A.030(1)(A). (Compl. ¶¶ 15-26, ECF No. 1.)

Page 1 – FINDINGS AND RECOMMENDATION

OHSU moves to dismiss Levario's Title VII claim with prejudice under Federal Rule of Civil Procedure 12(b)(6), arguing that Levario has failed to state a *prima facie* case of religious discrimination.[1] According to OHSU, Levario has failed to show that she held "bona fide religious beliefs, the practice of which conflict[ed] with an employment duty." (Def.'s Mot. at 6, ECF No. 4.)

Levario responds that the allegations in her Complaint (including that "her body is a sacred temple"), as supplemented by her description of her beliefs in her religious exception request (including that to become vaccinated would "idolize man over God" and "doubt His ability as [her] creator") demonstrate that her religious beliefs conflicted with the vaccine requirement. (Pl.'s Resp. at 4-6, ECF No. 9; Exception Request at 5, ECF No. 11-1.)

The court agrees with Levario that the allegations in her Complaint, together with her exception request, suffice to state a conflict between her *bona fide* religious beliefs and the vaccine mandate. Accordingly, OHSU's motion to dismiss should be denied.[2]

## PRELIMINARY MATTERS

Before reaching the merits of OHSU's motion to dismiss, the court addresses Levario's request that the court consider, in resolving the pending motion, the contents of the vaccine exception request she submitted to OHSU. "Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)." *Khoja*

---

[1]  OHSU moves to dismiss only Levario's Title VII claim because Levario voluntarily dismisses the parallel state law claim. (Def.'s Mot. at 2 n.1, ECF No. 4; Pl.'s Resp. at 1 n.1, ECF No. 9.)

[2]  The parties request oral argument. The court, however, does not believe that oral argument would help resolve the pending motion. *See* LR 7-1(d)(1).

Page 2 – FINDINGS AND RECOMMENDATION

*v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). An exception to this rule is the doctrine of incorporation-by-reference, *id.*, which Levario says applies to her exception request. (Pl.'s Resp. at 6.)

"[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja*, 899 F.3d at 1002. A document is subject to incorporation-by-reference if it "forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). A document forms the basis of a claim if that claim "necessarily rel[ies] on the contents" of the document. *Gershfeld v. TeamViewer US, Inc.*, Case-No. 21-55753, 2023 WL 334015, at *1 (9th Cir. Jan. 20, 2023) (documents formed the basis of plaintiff's claims because "the viability of [his] claims [were] dependent upon the extent and sufficiency of […] the disclosures form"); *see also Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (documents evidencing an agreement were considered "integral to the Amended Complaint" where resolution of plaintiff's claim "depend[ed] in large part on" what the agreement between the parties said). Incorporation-by-reference does not apply where "the document merely creates a defense to the well-pled allegations in the complaint" or where the relevance and authenticity of the material is disputed. *Khoja*, 899 F.3d at 1002; *Coto Settlement*, 593 F.3d at 1038.

Levario alleges that OHSU failed to make a good-faith effort to accommodate her religious beliefs when it denied her request for an exception to the vaccine policy. (Compl. ¶¶ 7, 24.) To establish a *prima facie* case of religious discrimination for failure to accommodate, a plaintiff must show that (1) she had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) she informed her employer of the belief and conflict; and (3) the

employer discharged, threatened, or otherwise subjected her to an adverse employment action. *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006).

Because Levario relies on the exception request she submitted to OHSU to meet the notice element of her failure-to-accommodate claim (Compl. ¶ 7; Pl.'s Resp. at 6), that request is incorporated by reference into her Complaint. OHSU does not oppose the court's consideration of Levario's exception request in resolving the pending motion. (Def.'s Reply at 2, ECF No. 12.) The court will treat the exception request "as though [it is] part of the complaint itself." *Khoja*, 899 F.3d at 1002.

## LEGAL STANDARD

A court will grant a Rule 12(b)(6) motion to dismiss for failure to state a claim when a claim is unsupported by a cognizable legal theory or when the complaint is without sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Assessing the sufficiency of a complaint's factual allegations requires the court to (1) accept that plaintiff's well-pleaded material facts alleged in the complaint are true; (2) construe factual allegations in the light most favorable to plaintiff; and (3) draw all reasonable inferences from the factual allegations in favor of plaintiff. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). A plaintiff's legal conclusions that are couched as factual allegations, however, need not be credited as true by the court. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of

underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Plausibility is the plaintiff's keystone to surviving a motion to dismiss. That is, a complaint's factual allegations must "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Plausibility is not probability, but plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND

Levario worked at OHSU for five years as a Patient Access Representative. In January 2020, she began working from home three days per week. Soon after that, when the COVID-19 pandemic began, she became a fully remote worker. (Compl. ¶ 4.)

In the summer of 2021, OHSU announced that it would require its employees to be vaccinated against COVID-19 or receive a medical or religious exception. (*Id*. ¶ 7.) Levario requested a religious exception to OHSU's vaccine requirement. As a devoutly religious individual, Levario believes that receiving any vaccine would be inconsistent with her Christian faith because vaccines are "not something that God created or endorses." (*Id*. ¶ 5.) She believes that she must protect the "physical integrity" of her body, and that

> her body is a sacred temple, and what she puts in it should come from God, and not from man. To get a vaccine would mean to go against the word of God and

Page 5 – FINDINGS AND RECOMMENDATION

> doubt his ability as her creator to protect her in sickness and health. To [her], taking a vaccine would be a sin.

(*Id.*) In support of her exception request, she attached a letter explaining why she could not, consistent with her faith, receive the COVID-19 vaccine:

> Vaccines are manmade, I cannot accept vaccines or modern medicine as my savior for my only savior and redeemer is Jesus Christ. I have learned the hard way that my body is a sacred temple and what I put into it should come from God, and God only. **In order to continue practicing my faith, I cannot be vaccinated.**
>
> There are many scriptures in the Bible that support these sentiments that I share with you. My religious convictions make me exempt from receiving vaccinations of *any* kind. My body is Holy, my blood is pure, & all humans & animals were made in the image of God. It is my sincerely held religious belief that I am a child of God. Receiving any type of vaccine would go against my personal religious belief and doing so would put a strain on my relationship with God as it is clear in His word that he has provided all that I need to survive. I no longer trust man to save me from illness because that would mean I idolize man over God. Vaccines were created by man, whom we are taught not to idolize and it is deception to believe otherwise. To blindly trust a creation by man that would taint my blood would mean I question my faith in the immune system that God has created for me. I believe God's greatest gifts on earth are in the form of fruits, vegetables, wild foods, & herbs. God makes not mistakes & to take a vaccine would doubt His ability to protect me in sickness & health for He has created all that I need.
>
> . . . .
>
> To get a vaccine would mean to go against the word of God & doubt His ability as my creator. It is my belief that everything in its natural state is as it should be. I am also vegan and do not believe in the exploitation of humans or animals. I believe humans arnd animals are meant to live in harmony with other species & that consuming animal[] products makes my blood unclear & taints the purity of the human species. Scientism exploits humans and other animal species, like monkeys and dog kidneys in the development of vaccines, therefore I personally cannot support laboratory testing, research, or manufacturing of products that use animals or humans during experimentation. I also do not vaccinate my pets for it would be unnatural & against God's will. I believe in the divinity of the human body, for it is a gift created in the image of God.
>
> . . . .

Page 6 – FINDINGS AND RECOMMENDATION

> With regards to vaccines, they contain fragments of DNA, cells, & proteins from other animals/fetuses, and all kinds of other substances that do not occur in our bodies naturally. They are also not found in the foods we are meant to consume. Taking a vaccine would be a sin and mean that I would be defiling the temple of God. At the end of life, I will be held accountable for all of my decisions and actions, which includes whatever I put into my body and I will have to be judged before God. My body is pure, holy, and clean; my deeply held religious beliefs make me exempt from the covid-19 vaccine, along with all other vaccines.

(Pl.'s Exception Request at 4-5.)

OHSU denied Levario's exception request, placed her on unpaid leave in October 2021, and fired her in December. (Compl. ¶¶ 8-9.)

## DISCUSSION

Title VII makes it unlawful for an employer "to discharge any individual … because of such individual's … religion[.]" 42 U.S.C. § 2000e–2(a)(1). For Title VII religious claims, the "term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's … religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

To establish religious discrimination under Title VII based on a failure to accommodate theory, Levario must plead that (1) she had a *bona fide* religious belief, the practice of which conflicted with an employment duty; (2) she informed her employer of the belief and conflict; and (3) the employer discharged her because of her inability to fulfill the job requirement. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004).

"The Supreme Court has, albeit in the free exercise context, cautioned against second-guessing the reasonableness of an individual's assertion that a requirement burdens her religious beliefs, emphasizing that a court's 'narrow function … in this context is to determine whether the

Page 7 – FINDINGS AND RECOMMENDATION

line drawn reflects an honest conviction.'" *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1224 (9th Cir. 2023) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014) (quotation marks omitted)). "[T]he resolution of [whether a belief is religious] is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas v. Review Bd.*, 450 U.S. 707, 714 (1981).

Although "the burden to allege a conflict with religious beliefs is fairly minimal," courts need not "take plaintiffs' conclusory assertions of violations of their religious beliefs at face value" and must still ask "whether [a plaintiff] has alleged an actual conflict." *Bolden-Hardge,* 63 F.4th at 1223 (citations omitted). Courts must also distinguish between conflicts that are "rooted in religious belief" as opposed to those based on "'purely secular' philosophical concerns." *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981) (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)).

OHSU argues that Levario fails to plead facts showing that her *bona fide* religious beliefs conflicted with the vaccine requirement. It contends that her allegations are insufficient in two ways: (1) she hasn't alleged facts showing that her opposition to receiving the vaccine was religious in nature (Def.'s Mot. at 6-7 ("Plaintiff does not allege any facts demonstrating that her objection to OHSU's vaccination policy stemmed from a bona fide religious belief."); Def.'s Reply at 6 (arguing that Levario's stated beliefs "are not religious")), and (2) Levario's allegations regarding her beliefs are "sparse at best" and "mere conclusory statements." (Def.'s Mot. at 7.)

The court first considers whether Levario stated an objection to the vaccine requirement that was religious in nature. In OHSU's view, Levario's beliefs that her body is a temple and that she must protect its physical integrity are insufficient to state a *religious* conflict with the vaccine requirement. (Def.'s Mot. at 9; Def.'s Reply at 5.)

OHSU relies on opinions from other courts in this district that have concluded that a plaintiff's allegations that "the body is a temple" or that the plaintiff must maintain her "bodily integrity" or "purity," without more, are insufficient to state religious conflicts with vaccine requirements. (Def.'s Reply at 5 (citing *Ruscitti v. Legacy Health*, Case No. 3:23-CV-00787-JR, 2023 WL 8007620, at *3 (D. Or. Sept. 27, 2023) (holding that objections to taking the vaccine based on belief that it violated bodily integrity and tainted purity of the body failed to show a conflict between religious beliefs and vaccination policy), *report and recommendation adopted*, 2023 WL 8006269 (D. Or. Nov. 16), and *Trinh v. Shriners Hosps. for Child.*, Case No. 3:22-CV-01999-SB, 2023 WL 7525228, at *10 (D. Or. Oct. 23, 2023) (holding that plaintiff's objections to the vaccine based on bodily integrity and purity did not allege enough facts to show that "anti-vaccination beliefs [were] religious in nature and protected by Title VII"), *report and recommendation adopted*, 2023 WL 7521441 (D. Or. Nov. 13)).)

As Levario points out, other courts in this district have concluded that those same allegations *are* sufficient to state a religious belief conflicting with a vaccine requirement. *E.g.*, *Thompson v. Asante Health Sys.*, Case No. 1:23-CV-00486-CL, 2023 WL 7348812, at *5 (D. Or. Sept. 21, 2023) (holding that plaintiff's belief that her body is a temple and that she needs to protect her physical integrity showed a conflict between her religious beliefs and the vaccine at the motion to dismiss stage), *report and recommendation adopted*, 2023 WL 7326496 (D. Or.

Page 9 – FINDINGS AND RECOMMENDATION

Nov. 7); *DeVito v. Legacy Health,* Case No. 3:22-CV-01983-YY, 2024 WL 687943, at *5 (D. Or. Feb. 19, 2024) (holding that plaintiff had alleged a conflict between her religious beliefs and the vaccine mandate because she "alleged her specific religious belief—alleged to derive from her Christian faith—in 'bodily integrity' and 'purity of body'").

As to those courts that have found allegations related to "bodily integrity" and "purity" insufficient at the motion-to-dismiss stage, they have done so because they concluded that, without more detailed factual allegations, it was unclear whether such objections stemmed from secular or religious beliefs. *See, e.g., Niemeyer v. NW Permanente*, Case No. 3:23-cv-00815-IM, 2024 WL 1999734, at *3 (D. Or. May 6, 2024) (concluding that plaintiff's opposition to vaccine because it would "constitute violating her bodily integrity and tainting the purity of her body" was factually insufficient, and that greater factual detail was necessary to determine whether plaintiff's objection was based in religious or secular beliefs); *Trinh*, 2023 WL 7525228, at *10 (holding that plaintiff's opposition to vaccine because it would "taint[] the purity of her body" lacked sufficient factual detail to demonstrate that the objection was religious in nature, but recommending leave to amend because the objection "could be predicated on religious beliefs"); *Ruscitti*, 2023 WL 8007620, at *3 (recommending that plaintiff be granted leave to amend because plaintiff might be able to amend her complaint to show that her objections based on protecting her bodily integrity and the "purity" of her body were religious in nature).

Here, the court need not decide whether such allegations, without more, would be sufficient to allege a religious belief conflicting with the vaccine requirement. That is because Levario's Complaint and exception request contain additional details demonstrating the religious basis for her beliefs that she must protect the physical integrity of her body and that receiving a

Page 10 – FINDINGS AND RECOMMENDATION

COVID-19 vaccine would violate that belief. In her exception request, Levario described her beliefs that anything she puts in her body must "come from God, and God only"; that receiving any manmade vaccine would mean that she "idolize[s] man over God"; that "God makes no mistakes and to take a vaccine would doubt His ability to protect [her] in sickness & health"; and that putting a vaccine that uses fetal or animal cells, protein, or DNA into her body would defile it because God did not intend those things to be in the human body. (Pl.'s Exception Request at 5; *see also* Compl. ¶ 5.) Those beliefs suffice to allege an objection to the vaccine requirement that is religious in nature.

OHSU goes on to characterize some of the beliefs described in Levario's request as "statements of medical or personal concern couched in generalized religious terms." (Def.'s Reply at 4.) Specifically, it points to Levario's statements that,

> [w]ith regards to vaccines, they contain fragments of DNA, cells, & proteins from other animals/fetuses, and all kinds of other substances that do not occur in our bodies naturally. They are also not found in the foods we are meant to consume. Taking a vaccine would be a sin and mean that I would be defiling the temple of God.

(*Id.* (citing Pl.'s Exception Request at 5).) OHSU also says that Levario's statements that she "no longer trust[s] man to save [her] from illness" and that she "cannot accept vaccines or modern medicine as [her] savior for [her] only savior and redeemer is Jesus Christ" are not religious. (Def.'s Reply at 6.)

The court is doubtful that the statements OHSU has identified, read in context, can reasonably be understood as secular beliefs. But, even if Levario's exception request includes some secular beliefs, that does not negate the fact that her exception request also described how her religious beliefs conflicted with the vaccine requirement.

Page 11 – FINDINGS AND RECOMMENDATION

Although "Title VII does not protect secular preferences" such as medical, political, and social preferences, *Tiano v. Dillard Dep't Stores*, Inc., 139 F.3d 679, 682 (9th Cir. 1998), the term religion includes "all aspects of religious observance and practice, as well as belief," *id*. (quoting 42 U.S.C. § 2000e(j)). As the Seventh Circuit observed in *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1009 (7th Cir. 2024), objections to a vaccine mandate can be on "both religious and non-religious grounds—for example, on the view that receiving the vaccine would violate a religious belief and implicate health and safety concerns." That is because "Congress permitted this, as we see no other way to give effect to the breadth of its definition of 'religion'—as covering 'all aspects' of an employee's religious observance, practice, and belief." *Id.* at 1009.

That approach aligns with the Ninth Circuit's view, in the free exercise context, that "a coincidence of religious and secular claims in no way extinguishes the weight appropriately accorded the religious one." *Callahan*, 658 F.2d at 684 (citing *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1977)). This court is unpersuaded by the reasoning of other courts that have assessed whether a plaintiff's objection was based *primarily* on secular or religious grounds. *E.g.*, *Brox v. Hole*, 590 F. Supp. 3d 359, 366 (D. Mass. 2022), *aff'd in part, vacated in part, remanded*, 83 F.4th 87 (1st Cir. 2023). Even if Levario's objection could be understood as based in part on secular beliefs, this court declines to engage in an inquiry as to whether her opposition to receiving the vaccine was "primarily" based on her religious or secular beliefs.

Finally, as to the contention that Levario's allegations are "sparse" or conclusory, OHSU appears to abandon that argument in light of Levario's exception request. (*See* Def.'s Reply at 3.) In any case, the court does not agree that Levario's allegations regarding the conflict between her religious beliefs and the vaccine requirement are either conclusory or insufficient. Her exception

Page 12 – FINDINGS AND RECOMMENDATION

request, which the court treats as part of her Complaint, explains that her religious beliefs prevent her from receiving any vaccines because vaccines are manmade, because relying on manmade vaccines to protect her health would idolize man over God, and because the vaccines contain substances that God did not intend to be in the human body. (Pl.'s Exception Request at 4-5.) Those allegations suffice to adequately plead a conflict between the vaccine requirement and Levario's *bona fide* religious beliefs. Accordingly, OHSU's motion to dismiss her Title VII claim should be denied.

### CLAIM UNDER ORS § 659A.030

In her Response, Levario states that she "has agreed to dismiss" her state-law claim for religious discrimination, as stated in OHSU's Motion to Dismiss. (Pl.'s Resp. at 1 n.1; Def.'s Mot. at 1 n.1 ("Plaintiff has agreed to voluntarily dismiss with prejudice the First Claim for Relief asserted in the Complaint alleging violation of ORS 659A.030.").) Accordingly, the court recommends that Levario's claim under ORS § 659A.030 be dismissed with prejudice.

\\\\\

\\\\\

\\\\\

\\\\\

\\\\\

\\\\\

\\\\\

\\\\\

\\\\\

## CONCLUSION

For the above reasons, OHSU's motion to dismiss (ECF No. 4) should be DENIED, and Levario's claim under ORS § 659A.030 should be dismissed with prejudice.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due within fourteen days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED: November 20, 2024

_____
JEFF ARMISTEAD
United States Magistrate Judge